This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Bradley W. Smith, appeals from the judgment entered in the Wayne County Court of Common Pleas, in which the court designated Jane A. Smith, appellee, the residential parent of the parties' minor children. We affirm.
Mr. and Ms. Smith were married on May 4, 1995. Two children were born of the marriage: Erin, who was born on May 5, 1995, and Laura, who was born on August 19, 1996. After approximately four years of marriage, Mr. Smith filed a complaint for divorce on March 17, 1999. Ms. Smith filed an answer and counterclaim for divorce on April 22, 1999. Each parent sought to be named the residential parent of Erin and Laura. A hearing on the matter was held before the magistrate, commencing on January 19, 2000. Following the hearing, the magistrate issued his report and proposed decision, in which he recommended, inter alia, that the parties be granted a divorce and that Ms. Smith be designated the residential parent of the children. On the same day, February 23, 2000, the trial court entered a judgment decree of divorce and designated Ms. Smith the residential parent of Erin and Laura. Additionally, the trial court awarded Mr. Smith visitation with his daughters. Both parties timely filed objections to the magistrate's decision. On July 13, 2000, the trial court overruled the parties' objections and adhered to its prior decision. Mr. Smith appealed the decision.
On appeal, this court reversed and remanded the case, holding that, because Ms. Smith had been convicted of domestic violence, in violation of R.C. 2919.25, "before naming [Ms. Smith] as the residential parent, the trial court was required [pursuant to R.C. 3109.04(C)] to determine whether such placement was in the best interests of the children and make specific findings of fact to support its determination." See Smith v.Smith (May 23, 2001), Wayne App. No. 00CA0063, unreported, at 3. On remand, the trial court made specific findings of fact and conclusions of law and determined that it was in the children's best interests for Ms. Smith to be designated the residential parent, even though she had been convicted of domestic violence. This appeal followed.
Mr. Smith asserts two assignments of error for review. We will discuss them together to facilitate review.
 First Assignment of Error The Trial Court abused its discretion in designating Defendant-Appellee residential parent of the parties' minor children.
 Second Assignment of Error The Trial Court's decision to designate Defendant-Appellee residential parent of the parties' minor children is against the manifest weight of the evidence.
Mr. Smith avers that the trial court abused its discretion and acted against the manifest weight of the evidence in designating Ms. Smith the residential parent of their two minor children, as the decision was contrary to the children's best interests. Specifically, he argues that the trial court erred in disregarding the recommendation of Dr. Charles Gibson, a licensed psychologist, who recommended that Mr. Smith be named the residential parent of the children, and in disregarding the results of the alcohol assessment conducted by Dr. John Tower. He also contends that the trial court failed to afford due weight to Ms. Smith's domestic violence conviction, which arose from an incident involving her then teenaged daughter, Angela. We disagree.
A trial court has broad discretion in its allocation of parental rights and responsibilities. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. Appellate courts must afford "the utmost respect" to the trial court's exercise of discretion because "[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Id. Consequently, a reviewing court may not overturn a trial court's determination regarding the allocation of parental rights and responsibilities absent an abuse of discretion. Donovan v. Donovan
(1996), 110 Ohio App.3d 615, 618. An abuse of discretion implies that the trial court's decision was arbitrary, unreasonable, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Additionally, when the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), Lorain App. Nos. 97CA006897/97CA006907, unreported, at 3; see, also, Anthony v.Wolfram (Sept. 29, 1999), Lorain App. No. 98CA007129, unreported, at 6 (applying the criminal manifest weight standard in determining whether a trial court's award of custody was against the manifest weight of the evidence).
 "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati
(1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
R.C. 3109.04 governs the allocation of parental rights and responsibilities.[1] R.C. 3109.04(B)(1) provides that "[w]hen making the allocation of the parental rights and responsibilities for the care of the children * * *, the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(F)(1) sets forth a nonexclusive list of considerations in determining a child's best interest:
 In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
Mr. Smith focuses on the factors contained in R.C. 3109.04(F)(1)(e) and (h) in arguing that the trial court abused its discretion and acted against the manifest weight of the evidence in determining that it was in the children's best interests to be placed with their mother, despite her domestic violence conviction.
At the hearing, Dr. Gibson testified that he conducted a psychological assessment of the parties. Dr. Gibson noted that Mr. Smith showed greater sensitivity to the children's emotional needs and felt that Ms. Smith was too concerned about how her answers to the questions sounded, and thus, was less candid in her interviews. Dr. Gibson admitted, however, that he only observed each of the parents interact one time with the children. Based upon his observations of the parties and the results of the psychological tests, Dr. Gibson believed that Mr. Smith has the better ability to make decisions about the welfare of the children, as he has a more objective viewpoint; therefore, Dr. Gibson recommended that Mr. Smith be named the residential parent of the children. Dr. Gibson, however, requested that Mr. Smith undergo an alcohol assessment because Mr. Smith claimed to consume four to five alcoholic beverages per day.
Pursuant to this request, Mr. Smith met with Dr. Tower, a psychologist who is a certified chemical dependency counselor. Based upon certain tests and his interview with Mr. Smith, Dr. Tower opined that Mr. Smith did not suffer from an alcohol problem and harbored no concern about Mr. Smith being named the residential parent of the children. On cross-examination, however, Dr. Tower related that he had not been informed that Mr. Smith had prior substance abuse issues. Moreover, Dr. Tower testified that Mr. Smith told him that he only consumed two to four beers once or twice per week and that he was unaware that Mr. Smith claimed to drink four to five alcoholic beverages per day on average during the interview with Dr. Gibson. When asked whether these facts, if true, would change his opinion, Dr. Tower acknowledged that it might, but not necessarily would, change his opinion.
Angela Bates, Ms. Smith's daughter who was eighteen years old at the time of the hearing and lived in the marital residence, testified that she and her mother had frequent arguments during her junior and senior years of high school. These arguments usually involved loud yelling and even screaming. She testified that, in August 1998, she and her mother were having an argument, which led to her mother threatening her with a knife. Angela called the police, and eventually, Ms. Smith pled no contest to a domestic violence charge arising out of the incident. Angela related that she was not hurt as a result of the incident and that her mother does not yell and scream in anger as much any more. Angela further acknowledged that her mother takes good care of Laura and Erin and is a good mother. Lastly, Angela stated that Mr. Smith is generally more calm and less likely to engage in arguments.
Mr. Smith testified that he should be named residential parent because he loves his daughters, has a good relationship with them, cooks for them frequently, enjoys life more, and spends quality recreational time with them. Mr. Smith stated that he was the children's primary caregiver. Mr. Smith also stated that, should he be designated the residential parent, he had the flexibility to rearrange his work schedule to be at home more with the children and swore to comply with any court-approved visitation orders. He denied ever consuming four to five beers per day and felt that Dr. Gibson must have misunderstood him regarding his alcohol consumption. He was convicted of driving under the influence of alcohol for an incident which occurred in October 1999; however, he stated that he currently has significantly reduced his alcohol consumption.
Mr. Smith accused Ms. Smith of preventing him from taking the children anywhere without her, including to visit his family which had previously enjoyed a close relationship with the children. On cross-examination, he admitted that Ms. Smith only objected on some occasions, not every occasion. Nevertheless, he feels that his parents' contact with the children has been extremely limited since the divorce proceedings began. Additionally, Mr. Smith testified as to various incidents during which Ms. Smith behaved inappropriately in front of the children. In describing the August 1998 incident, Mr. Smith testified that Ms. Smith became extremely angry with Angela over something minor, chased her around the house, beat her with a clothes hanger, brandished a steak knife, and threatened to kill her. Mr. Smith expressed concern that Ms. Smith might be mentally unstable and believed that it was unsafe to leave the children with her; however, he admitted to leaving the children alone in her care on several occasions.
Angela Haugh, an intake caseworker for the Wayne County Children's Services Board, investigated the August 1998 domestic violence incident. She opined that the family was at low risk for future occurrence of abuse and neglect. In making such an assessment, however, Ms. Haugh did not have the benefit of discussing the details of the incident with either Mr. or Ms. Smith, as they decided not to discuss the matter due to the pending criminal charge. Even after Ms. Smith pled no contest, Mr. and Ms. Smith continued to decline to speak with her about the incident. Accordingly, Ms. Haugh based her risk assessment on her conversations with Ms. Smith's daughter, Angela.
Julie Yoder and George Smith, Mr. Smith's sister and father respectively, testified that Ms. Smith repeatedly prevented the children from being alone with their father and from visiting his family. Both testified that Ms. Smith has become extremely angry and has lost control of herself in their presence. Ms. Yoder also recounted an incident during which Ms. Smith's other daughter, Michelle, vehemently refused to go home with Ms. Smith.
Ms. Smith called Evelyn Robinson, a neighbor and friend, to testify on her behalf. Ms. Robinson testified that Mr. Smith travels frequently, while Ms. Smith is home more often on a regular basis. She related that Mr. Smith has a reputation in the neighborhood for consuming too much alcohol, but that neither parent has done anything to cause her to fear for the safety of the children. On cross-examination, Ms. Robinson admitted that she only had actual contact with Mr. Smith approximately two to five times at his house since 1995, but that she sees Ms. Smith on a weekly basis.
Hillary Harper, Ms. Smith's former coworker, testified that, based on her conversations with Ms. Smith and her personal observations, she believes that Ms. Smith's top priority is her children. When asked, Ms. Harper stated that she never witnessed Ms. Smith become "unglued" at work. Similarly, Nancy Lutz, the former housekeeper of the Smiths, testified that Ms. Smith never demonstrated unstable behavior and has a very good relationship with the children. She added that both Mr. and Ms. Smith are good parents who love their girls, and their girls love them. Ms. Lutz, however, had not seen the family for the past year, as she no longer worked for the family.
Melanie Holly, Erin's preschool teacher, testified that both parents have been very interested in Erin's preschool and have behaved appropriately during visits. Ms. Smith organized the Christmas party during which Mr. Smith played Santa Claus. Ms. Holly further related that Ms. Smith requested that Ms. Holly keep Mr. Smith informed because Mr. Smith was also very interested in the children.
Lastly, Ms. Smith testified that she should be designated the residential parent of the children because she has placed their needs above her own, loves them greatly, has been their primary caregiver, and would comply with any court-approved visitation with Mr. Smith. Ms. Smith related that she, not Mr. Smith, would mostly stay home with the children when they were sick, take them to doctor's appointments, and take them to their extracurricular activities. Additionally, she stated that she left her position at Ameritech after eighteen years and obtained employment at Nextlink in order to spend more time with her children. She is currently unemployed but is targeting positions that would permit her to work a regular schedule and still be available for the children. Ms. Smith noted that Mr. Smith works long hours and is frequently required to travel for his job. According to Ms. Smith, on a few weekends, Mr. Smith chose to take pleasure trips instead of spending time with his daughters. Ms. Smith believes that Mr. Smith has an alcohol problem because he drinks between four to six beers per day on average.
Regarding the domestic violence conviction, Ms. Smith denied ever hitting Angela with a coat hanger and threatening her with a knife. She stated that, after discussing the pending domestic violence charge with Mr. Smith, they decided to put the matter behind them and "move on," and therefore, she pled no contest. She testified that, at that time, she did not realize that he was planning to file for divorce. In addition, she related that, at one time, Mr. Smith struck Angela in the jaw. Angela, however, testified that she did not remember such an incident. Ms. Smith further stated that, after the complaint for divorce was filed, Mr. Smith was convicted of disorderly conduct for behavior directed at Ms. Smith. Nonetheless, she added that Mr. Smith is not a bad person and that they both love their children. She expressed the hope that Mr. Smith would remain a large part of their daughters' lives if she were named residential parent.
In support of its decision to name Ms. Smith the residential parent, the trial court found that Ms. Smith has been the primary caregiver of the children throughout their young lives, has a work schedule which generally permits her to be home more with the children, and has demonstrated that she was more likely to honor and facilitate any visitation time approved by the court. The court also concluded that it was in the children's best interests to have a stable, structured environment due to their tender ages and agreed with Dr. Gibson that Ms. Smith was more likely to create such an environment. Furthermore, the trial court stressed the importance of the children continuing their relationship with their half-sister, Angela, who lives in the marital residence and has provided some care for them. The trial court also determined that neither parent had such poor mental or physical health as to be unable to care for the children.
As there was a substantial amount of conflicting testimony adduced at the hearing, the trial court's determination must be given great deference because the trial court had the opportunity to observe the witnesses' demeanors and adjudge their credibility accordingly. Miller,37 Ohio St.3d at 74. In its decision, the trial court repeatedly emphasized that it found Mr. Smith's testimony to be generally not credible and that Ms. Smith was more honest and forthcoming in her version of events. Moreover, the court afforded the experts' recommendations less weight because it believed that Mr. Smith was not "candid and forthcoming in the information provided to the two experts conducting the psychological and alcohol assessment[s]." Furthermore, regarding the domestic violence conviction, the court determined that Ms. Smith's version of the incident was more credible, that the incident did not cause any serious harm to Angela, and that it was an isolated event which occurred in the context of ongoing marital and family disputes.
After an independent review of the record and considering the factors enumerated in R.C. 3109.04(F)(1), we conclude that the trial court neither abused its discretion nor acted against the manifest weight of the evidence in finding that it was in Erin and Laura's best interests for Ms. Smith to be designated residential parent, even though Ms. Smith had pled no contest and was convicted of domestic violence. Accordingly, Mr. Smith's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BAIRD, J., WHITMORE, J. CONCUR.
[1] This court will apply the version of R.C. 3109.04 in effect at the time of both the filing of the complaint for divorce and the journalization of the decree of divorce. Subsequent to those events, R.C. 3109.04 was amended on March 22, 2001.